IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WORLDWIDE INSURANCE NETWORK, INC. d/b/a/ SMART CHOICE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:17CV1044 |
| ROD MOORE and MOORE'S FINANCIAL GROUP, INC. f/k/a ROD MOORE & ASSOCIATES, LLC, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action pursuant to 28 U.S.C. § 1332 on the basis of diversity against Defendants Moore's Financial Group, Inc. ("MFG"), and its owner, Rod Moore ("Moore"), alleging three state law claims arising out of the parties' business relationship. (ECF No. 1 ¶¶ 18–36.) On March 23, 2018, Defendants filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 23.) Plaintiff, on April 11, 2018, filed a Motion for Voluntary Dismissal Without Prejudice pursuant to Rule 41(a)(2). (ECF No. 28.) Both motions are now before the Court. For the reasons set forth below, Defendants' motion will be denied, and Plaintiff's motion will be granted subject to the condition that Plaintiff pay Defendants' reasonable taxable costs.

I.  **BACKGROUND**

Plaintiff is a North Carolina corporation with its principal place of business in Greensboro, North Carolina. (ECF No. 1 ¶ 1.) MFG is a Mississippi corporation with its principal place of business in Olive Branch, Mississippi, and Moore is a Mississippi resident. (*Id.* ¶¶ 2–3.) Plaintiff "provides insurance products and services," and hired Defendants to serve as a Territory Manager, who would "recruit and manage the independent insurance agents who then sell [Plaintiff's] products and services to consumers." (*Id.* ¶¶ 6–7, 9.) That relationship began on September 23, 2015, and ended on April 5, 2016, when Defendants resigned. (*Id.* ¶¶ 9, 11.) Months later, after Plaintiff sent a cease and desist letter to Defendants for alleged breaches of the restrictive covenants contained in the original contract, the two parties entered into a "Consent Agreement." (*Id.* ¶¶ 12, 13.) Plaintiff alleges that Defendants have continued to violate the restrictive covenants contained in both the original contract and the Consent Agreement. (*Id.* ¶ 15.)

Plaintiff filed this action on November 15, 2017, alleging breach of contract, misappropriation of confidential information and trade secrets, and tortious interference with contractual and business relations. (*Id.* ¶¶ 20, 28, 32.) Contemporaneous with the Complaint, Plaintiff filed a motion for expedited discovery, (ECF No. 5), and a motion for preliminary and permanent injunction, (ECF No. 7). After the parties "completed [the] expedited discovery and . . . commenced formal settlement negotiations[,]" (ECF No. 20 at 1), Plaintiff withdrew its motion for preliminary and permanent injunction, (*id.*), and Defendants filed their Answer, (ECF No. 21). Three weeks later, on March 23, 2018, Defendants filed a Motion to Dismiss, arguing that Plaintiff failed to meet the amount in controversy threshold for diversity

jurisdiction and that the parties were required to mediate this dispute before litigation. (ECF No. 23.) In response, Plaintiff filed a Motion for Voluntary Dismissal Without Prejudice, (ECF No. 28), which Defendants oppose, (ECF No. 29). Because Defendants' motion raises the issue of jurisdiction, which involves the power of this Court to hear this matter at all, the Court will address Defendants' motion first. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

## II. DEFENDANTS' MOTION TO DISMISS

*A. Standard of Review*

"The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."[1] *Arbaugh*, 546 U.S. at 506. A motion under Rule 12(b)(1) raises the question "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of establishing subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When evaluating a Rule 12(b)(1) motion to dismiss, a court may consider evidence outside the pleadings and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768

---

[1] Defendants filed their motion to dismiss following the filing of their Answer. Although Rule 12(b) motions generally must be made before pleading, *see* Fed R. Civ. P. 12(b), Rule 12(h)(3) requires that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed R. Civ. P. 12(h)(3).

3

(4th Cir. 1991)).  Once a Court determines it lacks subject matter jurisdiction, it "must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see also Arbaugh*, 546 U.S. at 514.

    *B.  Amount in Controversy*

Defendants first argue that the Court lacks subject matter jurisdiction over this action because the amount in controversy is less than $75,000, as required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (ECF No. 25 at 1.)  "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014).  "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'" *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  To prevail, defendants "must show 'the legal impossibility of recovery' to be 'so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.'" *Id.* (quoting *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981)).  Further, "requests for injunctive relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy."  *Id.* at 639; *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).  Because a plaintiff may "aggregate smaller claims in order to reach the jurisdictional threshold," it is permissible to reach that threshold by adding together claims for damages and for injunctive relief.  *JTH Tax,* 624 F.3d at 639.  Defendants therefore bear a "heavy burden" when seeking to dismiss a diversity action for lack of a sufficient amount in controversy.  *Id.* at 638.

In its Complaint, which was filed in federal court, Plaintiff alleges that "the matter in controversy exceeds $75,000, . . . because if the requested relief is not granted, Plaintiff will likely lose a substantial amount of business, resulting in damages that far exceed $75,000." (ECF No. 1 ¶ 4.) As part of the Complaint, Plaintiff requests damages and injunctive relief for its three causes of action. (*Id.* ¶¶ 22, 23, 30, 34, 35, 45.) Defendants argue that Plaintiff cannot meet the requisite threshold because its damages are far less than $75,000 and that it has withdrawn its request for injunctive relief. (ECF No. 31 at 7–12.)

Defendants introduce evidence from the expedited discovery that the parties conducted in anticipation of this motion. (*See* ECF No. 31-1, 31-2, 31-3.) Defendants argue that the "undisputed evidence" shows that Plaintiff's damages "fall woefully short of $75,000.00." (ECF No. 31 at 7.) In support of that contention, Defendants point to a spreadsheet that they claim documents "all sales of property and casualty insurance products which were made from January 1, 2017 to July 1, 2017 by an independent agent associated with [MFG] during the period in which [MFG's] non-compete and the Consent Agreement were in effect." (*Id.* at 9; *see* ECF No. 31-1 at 14–16.) Defendants conclude that this spreadsheet shows that Plaintiff can prove no more than $10,305.51 in damages. (ECF No. 31 at 11; ECF No. 31-1 at 16.) Defendants do not address the prospect of valuing Plaintiff's requested injunctive relief, because they claim that "Plaintiff has dismissed its claim for injunctive relief." (ECF No. 25 at 6.)

Plaintiff argues in response that the expedited discovery process did not produce "'undisputed evidence' . . . at this early stage of litigation." (ECF No. 33 at 5.) Plaintiff argues that the spreadsheet introduced by Defendants did not fully encompass all the damages at

5

issue in this case. (*Id.* at 6–7.) Plaintiff further argues that it did not abandon its claim for injunctive relief when it withdrew its motion for preliminary and permanent injunctions. (ECF No. 29 at 5.)

As stated above, Defendants bear a "heavy burden" in showing "the legal impossibility of recovery" in excess of $75,000 by Plaintiff. *JTH Tax,* 624 F.3d at 638. Although Defendants assert that the events described in the spreadsheet "are the only sales that even arguably violate the terms of [Defendants'] non-compete and non-solicitation provisions," (ECF No. 31 at 10), this Court is not convinced that this spreadsheet satisfies Defendants' heavy burden. The dates on the spreadsheet, with the exception of a few outliers, range from February 5, 2017 to May 30, 2017. (ECF No. 31-1 at 14–16.) The non-compete and non-solicitation provisions, however, remained in effect until April 5, 2018, (ECF No. 25-2 at 2, 4), and Defendants provide no explanation as to whether there were any additional breaches of those provisions between May 30, 2017 and April 5, 2018. In addition to potential violations of the non-compete and non-solicitation provisions, Plaintiff argues that Defendants are still bound by the restriction against using Plaintiff's confidential information, (ECF No. 29 at 4), which may create additional damages from April 5, 2018 to the present day. Although Defendants assert that "the transactions listed in the [spreadsheet] are the only sales that even arguably violate the terms of [MFG's] non-compete and non-solicitation provisions[,]" (ECF No. 31 at 10), Defendants have not proved that fact to a "legal certainty." *JTH Tax,* 624 F.3d at 638.

Further, Defendants do not address the value of a potential permanent injunction. Contrary to Defendants' assertions, (ECF No. 25 at 6), Plaintiff has not withdrawn its request

6

for injunctive relief. Though Plaintiff did withdraw its separate motion for preliminary and permanent injunction, (ECF Nos. 7, 20), it did not amend its Complaint, in which it requested injunctive relief, (ECF No. 1 ¶¶ 37–45). Therefore, Plaintiff's request for injunctive relief survives and must be included in any calculation of the amount in controversy.[2] *See JTH Tax*, 624 F.3d at 639. Neither Plaintiff nor Defendants attempt to calculate the value of the requested injunctive relief, (*see* ECF Nos. 29, 31, 33), although Plaintiff does allege that "if the requested relief is not granted, Plaintiff will likely lose a substantial amount of business, resulting in damages that far exceed $75,000." (ECF No. 1 ¶ 4.) Similar to the damages question, the defendant must show "with legal certainty that [the plaintiff's] injunction is worth less than the requisite amount." *JTH Tax*, 624 F.3d at 640 (emphasis omitted). Because Defendants do not make such a showing, this Court will not conclude that the amount in controversy is below $75,000. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied.

### C. *Failure to Mediate*

Defendants next argue that the Court should dismiss Plaintiff's Complaint because Plaintiff failed to comply with what Defendants claim is a mandatory mediation requirement. (ECF No. 25 at 6.) Defendants argue that "[t]his case is no different" than cases from other districts in which courts have dismissed an action for failure to comply with a contract's

---

[2] Although Defendants are correct in their assertion that the non-compete and non-solicitation restrictions expired on April 5, 2018, (ECF No. 31 at 9), Defendants ignore the restriction on disclosing Plaintiff's confidential information that lasts "in perpetuity," (ECF No. 25-2 at 2.) Therefore, Plaintiff's request for "a permanent injunction prohibiting [Defendants] from using [Plaintiff's] Confidential Information (as defined in the Agreement)" is still pending before the Court. (ECF No. 1 ¶ 38.)

7

mandatory pre-suit mediation provision. (*Id.*) Plaintiff argues in response that the alleged mediation provision does not explicitly require that mediation be completed before filing suit. (ECF No. 29 at 6–7.)

The contract provision in question, which appears in the parties' original Territory Manager contract, reads, as follows:

> **Submission to Mediation**. Except for actions for injunctive relief as provided in this Agreement, all disputes arising from this Agreement and the business relationship between WIN and the Territory Manager, or any individuals associated with WIN, or Territory Manager must be submitted to nonbinding mediation administered by an established, neutral mediation service with experience in insurance and contract disputes. Both parties must sign a confidentiality agreement before participating in any mediation proceeding providing that no party shall disclose or use any communications with each other or with the mediator in any subsequent arbitration or litigation. All mediations shall be conducted according to the North Carolina rules for mediated settlement conferences. Unless otherwise agreed, the mediation will take place in Guilford County, North Carolina. Once either party has submitted a dispute to mediation, the obligation to attend will be binding on both parties.

(ECF No. 25-1 at 3.) Defendants argue that the mention of "any *subsequent* arbitration or litigation" indicates that the parties intended the mediation to be a prerequisite for any potential litigation. (*Id.* (emphasis added); ECF No. 25 at 6.) Plaintiff contends that the mediation only has to be completed at some time, not necessarily as a condition precedent to the filing of a lawsuit. (ECF No. 29 at 7.)

Because Plaintiff brought this case in federal court in North Carolina based on diversity jurisdiction, and the contract contains a choice of law provision designating North Carolina law as the governing law, the mediation provision must be interpreted in accordance with North Carolina contract principles. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*,

8

386 F.3d 581, 599–600 (4th Cir. 2004). Under North Carolina law, when interpreting a contract, the court must read "the contract itself for indications of the parties' intent at the moment of execution. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *State v. Philip Morris USA Inc.*, 618 S.E.2d 219, 225 (N.C. 2005) (internal citations and quotation marks omitted). Further, for a contract provision to be construed as a condition precedent, the provision must contain "clear and plain language" that requires such a construction. *Harllee v. Harllee*, 565 S.E.2d 678, 682 (N.C. Ct. App. 2002).

While the contract provision in question only states that mediation "must" occur, it does not specifically provide that it must occur before or as a condition precedent to litigation. (*See* ECF No. 25-1 at 3); *see also Kane Builders S & D, Inc. v. Md. CVS Pharmacy, LLC*, Civ. No. DKC 12-3775, 2013 WL 2948381, at *3–4 (D. Md. June 13, 2013) (staying a case for mediation based on a clause that stated that disputes "arising out of or related to the Contract . . . shall be subject to mediation as a condition precedent to binding dispute resolution"); *Tattoo Art, Inc. v. Tat Int'l., LLC*, 711 F. Supp. 2d 645, 649–50 (E.D. Va. 2010) (enforcing a provision which states that "the parties agree to submit the dispute to mediation . . . prior to filing any action to enforce this Agreement"). Because the provision in question in this case does not, in "clear and plain language," require mediation as a condition precedent to litigation, this Court will not so require. *See Harllee*, 565 S.E.2d at 682. Accordingly, Defendants' motion to dismiss for failure to mediate will be denied.

9

## III. PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL

Plaintiff has also moved to dismiss this action without prejudice because, as it argues, it has filed a similar suit against Defendants in state court. (ECF No. 28 at 2.) Plaintiff states that it filed its state action "because of evidence uncovered about Defendants conspiring with several North Carolina citizens to commit torts against Plaintiff (thus eliminating complete diversity for jurisdictional purposes)." (*Id.*) Plaintiff has already filed that state suit, which includes both of the defendants in the present case along with several North Carolina citizens as defendants, alleging that they all conspired to unfairly compete with Plaintiff, among other claims. (ECF No. 31-4 ¶¶ 70–95.)

Defendants oppose Plaintiff's motion. (ECF No. 32 at 1.) Defendants do not, however, argue that this matter should not be dismissed or that it should be dismissed with prejudice. (*Id.* at 2.) Defendants instead argue that the Court should allow "the Plaintiff's requested dismissal without prejudice, but on condition that damages in any successive action be limited to $75,000.00, and that Plaintiff[ ] pay Moore's attorney's fees [and costs] associated with this federal action." (*Id.* at 2, 9.) Plaintiff, in response, argues that Defendants will not face "substantial prejudice" if this matter is dismissed without prejudice and without conditions, and, further, that attorney's fees are not warranted in this case. (ECF No. 33 at 8–9.)

A motion for voluntary dismissal made after an answer or motion for summary judgment has been filed requires an order of the court. Fed R. Civ. P. 41(a)(2). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987); *see Andes v. Versant Corp.*,

788 F.2d 1033, 1036 (4th Cir. 1986) ("[D]ismissal without prejudice should not be denied absent *substantial prejudice* to the defendant." (emphasis added)). Courts generally consider four factors when ruling on motions for voluntary dismissal:

> (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, *i.e.*, whether a motion for summary judgment is pending.

*Gross v. Spies*, 133 F.3d 914, 1998 WL 8006, at *5 (4th Cir. 1998) (unpublished table decision); *see also Wilson v. Eli Lilly & Co.*, 222 F.R.D. 99, 100 (D. Md. 2004); *Teck Gen. P'ship v. Crown Cent. Petrol. Corp.*, 28 F. Supp. 2d 989, 991 (E.D. Va. 1998). These factors are not exhaustive, and "any other relevant factors should be considered by the district court depending on the circumstances of the case." *Gross*, 1998 WL 8006, at *5.

The court may "impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice." *Davis*, 819 F.2d at 1273. "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." *Id.* The Fourth Circuit has held that courts should impose a condition that the dismissing party pay the reasonable taxable costs of the nonmoving party "as a matter of course in most cases." *Id.* at 1276. Courts may also award attorney's fees to the nonmoving party for work that "could not be used again in a future suit." *Lang v. Mfrs. & Traders Tr. Co.*, 274 F.R.D. 175, 185 (D. Md. 2011).

Defendants argue that the first, third, and fourth factors weigh in favor of imposing conditions on the voluntary dismissal. (ECF No. 32 at 6–8.) Regarding the first factor, Defendants claim that they "expended considerable resources conducting expedited discovery at Plaintiff's request, exchanging written discovery requests and responses thereto with

11

Plaintiff, and preparing for, conducting, and defending multiple depositions." (*Id.* at 6.) Defendants also claim that they "formulated [their] legal strategy based on Plaintiff's initial filing of this action in federal court," and that "much of the legal work thus far has been geared towards attacking" the "uniquely federal question of jurisdiction." (*Id.*) Plaintiff downplays these concerns, arguing that the expedited discovery consisted of "responding to limited written discovery and sitting for a single day of depositions" and that any such discovery could be used in the subsequent state matter, as "Defendants' [jurisdictional] attack is simply grounded in a damages investigation." (ECF No. 33 at 8, 9.)

This Court finds that the first factor does not weigh in favor of finding that voluntary dismissal would prejudice Defendants. Defendants recognize that this discovery period was relatively short, referring to the discovery in this case as "abbreviated" and "truncated." (ECF No. 32 at 1, 3.) The discovery that has been introduced to the Court thus far relates to the previously-discussed issue of damages, specifically whether the amount in controversy meets the $75,000 threshold for diversity jurisdiction. (*See* ECF No. 31 at 3–12; ECF No. 33 at 5–7; *see also* ECF Nos. 31-1, 31-2, 31-3, 33-1, 33-2.) The Court therefore finds that Defendants are not prejudiced by their "effort and expense in preparing for trial," *Gross*, 1998 WL 8006, at *5, because a large portion of the materials from the abbreviated discovery period in this case may be used in the subsequent state action. Accordingly, the first factor weighs in favor of voluntary dismissal without prejudice.

Defendants next argue that the third factor weighs in their favor because Plaintiff has proffered an "insufficient explanation of the need for a dismissal." *Id.*; (ECF No. 32 at 7). Specifically, Defendants claim that "Plaintiff has not cited to or attached any of the 'evidence'

which it claims demonstrates the existence of a conspiracy between [Defendants] and certain non-diverse defendants." (ECF 32 at 7.) Plaintiff does, however, cite to such evidence in its reply brief, explaining how Defendants and the alleged North Carolina co-conspirators worked together to improperly compete against Plaintiff. (ECF No. 33 at 2–5.) Further, Defendants introduced Plaintiff's state court complaint into the record, which includes all of Plaintiff's allegations and eight claims against Defendants and the alleged North Carolina co-conspirators. (*See* ECF No. 31-4.) Because Plaintiff has proffered a sufficient explanation of its need to dismiss this action, the third factor weighs in favor of finding no prejudice.

Defendants also argue that the fourth factor, the present stage of the litigation, weighs in favor of finding prejudice. (ECF No. 32 at 7.)[3] The Fourth Circuit has held that this factor will weigh in a defendant's favor if discovery has been completed and a summary judgment motion is pending. *See Gross*, 1998 WL 8006, at *5 (stating the fourth factor as "the present stage of the litigation, *i.e., whether a motion for summary judgment is pending*" (emphasis added)); *Andes*, 788 F.2d at 1036 (affirming a denial of a motion to voluntarily dismiss when the plaintiffs in question had not only "fil[ed] motions and memoranda in support of summary judgment, but also . . . incurr[ed] substantial costs of discovery, through depositions, production of documents, and obtaining of expert opinions on English law" (footnote omitted)). In the present case, the parties have only engaged in "abbreviated" discovery to address the amount in controversy issue and have not otherwise progressed beyond the

---

[3] Defendants primarily argue that the present stage of the litigation weighs in favor of finding prejudice because Plaintiff is "seeking to avoid an adverse ruling from this Court on the damages and jurisdictional" issues raised in Defendants' motion to dismiss. (ECF No. 32 at 7.) Because the Court held, above, that Defendants' motion to dismiss will be denied, there is no other motion pending before the Court that could result in an "adverse ruling" against Plaintiff.

13

motion to dismiss stage. Because the parties have not progressed to full discovery or begun briefing summary judgment motions, the present stage of the litigation weighs in favor of finding no prejudice.

In conclusion, none of the three relevant factors weigh in favor of finding that Defendants would suffer prejudice if a voluntary dismissal is granted. Moving to Defendants' proposed relief, they argue that if Plaintiff is allowed to voluntarily dismiss this action, the Court should impose two conditions: a $75,000 cap on any subsequent action filed by Plaintiff, and that Plaintiff pay Defendants' taxable costs and attorney's fees. (ECF No. 32 at 2.)

Regarding the damages cap, Defendants do not cite any case in which a court has imposed a damage cap on a dismissing party against its will. (*See id.* at 8–9.) Defendants only cite to cases in which the plaintiff agreed to limit its damages in order to avoid the federal jurisdictional threshold and remain in state court. *See Hailstock v. Home Depot U.S.A., Inc.*, Civ. No. DKC 11–1438, 2011 WL 3240484, at *2–3 (D. Md. July 27, 2011) (imposing a condition that the plaintiff be limited to a maximum amount of $75,000 when the plaintiff stipulated to that amount in her motion for voluntarily dismissal); *Lang*, 274 F.R.D. at 186 (imposing such a condition when the plaintiffs stipulated to refiling for $53,000 in state court); *Scioneaux v. Monsanto Co.*, No. Civ.A. 01–1714, 2001 WL 1104632, at *2 (E.D. La. Sept. 19, 2001) (imposing a $75,000 limit on the plaintiff's subsequent state action when the plaintiff stipulated to such in his motion). Plaintiff, in this case, has made no such stipulation regarding its damages. (*See* ECF Nos. 28, 33.) Further, Plaintiff's state court action involves additional defendants and additional claims, making it likely that the amount in controversy would be greater in the state action than in this federal action. (*See* ECF No. 31-4.) Accordingly, this Court concludes that

14

imposing a damages cap on Plaintiff's subsequent state action as a condition for dismissal would be improper.

Defendants also argue for the imposition of taxable costs and attorney's fees. The Fourth Circuit has held that the plaintiff should pay a portion of the Defendants' taxable costs "as a matter of course in most cases." *Davis*, 819 F.2d at 1276. "Furthermore, the costs 'must be reasonable, and shall not include payment for activities of any defendant that will likely be applicable to any subsequent litigation.'" *Haynes v. Genuine Parts Co.*, 1:13CV615, 2015 WL 8484448, at *7 (M.D.N.C. Dec. 9, 2015) (quoting *Dean v. WLR Foods, Inc.*, 204 F.R.D. 75, 80 (W.D. Va. 2001)). Therefore, as a condition of this Court granting Plaintiff's Motion to Voluntarily Dismiss, the Court will order that Plaintiff pay Defendants' reasonable taxable costs.

Attorney's fees, however, are not warranted in this case. The Fourth Circuit has held that attorney's fees are not warranted when "federal discovery will be useable in the state forum" and when "the plaintiff has [not] acted in bad faith in seeking dismissal under 41(a)(2)." *Davis*, 819 F.2d at 1276. Here, the "abbreviated" discovery in this case appears to be useable in the subsequent state action, and there is no indication that Plaintiff has acted in bad faith in filing this motion. Therefore, this Court will not require Plaintiff to pay Defendants' attorney's fees under the circumstances of this case.

In conclusion, Plaintiff's Motion to Voluntarily Dismiss, (ECF No. 28), shall be granted, subject to the condition that Plaintiff pay Defendants' reasonable taxable costs for this action. Defendants are therefore directed to promptly file a bill of costs.

For the reasons stated herein, the Court enters the following:

# ORDER

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, (ECF No. 23), is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Voluntary Dismissal, (ECF No. 28), is GRANTED, subject to the condition that Plaintiff pay Defendants' reasonable taxable costs associated with this matter.

IT IS FURTHER ORDERED that the costs of this action are taxed against the Plaintiff. Defendants shall submit an itemized bill of costs within fourteen (14) days of the entry of this Order.

This, the 11th day of January 2019.

/s/ Loretta C. Biggs
United States District Judge